UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| THE NATURE CONSERVANCY, INC., )<br>)<br>    Plaintiff,      )<br>)<br>v.                 )<br>)<br>)<br>LARRY A. SIMS and     )<br>MARSHA K. SIMS,      )<br>)<br>    Defendants.    )| Civil Action No. 07-112-JMH<br><br><br>**MEMORANDUM OPINION AND ORDER** |

** ** ** ** **

This matter is before the Court on cross Motions for Summary Judgment [Record Nos. 42 and 43]. Plaintiff responded to Defendants' Motion for Summary Judgment [Record 46]. Defendants did not respond to Plaintiff's Motion for Summary Judgment. The time for replies having passed and none having been filed, this matter is ripe for review.

**I.  BACKGROUND**

On or about December 21, 2001, Plaintiff, The Nature Conservancy ("TNC"), conveyed to Defendants Larry and Marsha Sims (collectively, "Defendants" or the "Sims") a 100.10 acre tract of rural real property located in Lancaster, Garrard County, Kentucky (the "Property"). On December 28, 2001, Defendants executed a Conservation Easement on the Property, in favor of TNC (the "Easement"). The purpose of the Easement is to "assure that the Protected Property will be retained forever substantially

undisturbed in its natural condition and to prevent any use of the Protected Property that will significantly impair or interfere with the Conservation Values of the Protected Property." Easement at 2. Pursuant to the Easement, Defendants agreed that certain activities on or uses of the Property were prohibited.

Based upon TNC's January 25, 2005, inspection of the Property, as permitted by the Easement, TNC filed its Complaint requesting injunctive relief to remedy what it believed were violations of the Easement. Specifically, TNC complained that the following actions by Defendants violated the Easement: 1) grazing livestock in the Henslow's Sparrow Management Area without filing a grazing plan with the Garrard County District Conservationist, in violation of § 3.2; 2) placing trash in a sinkhole located on the property, in violation of § 2.7; 3) excavating and removing trees in and around the sinkhole, in violation of §§ 2.7 and 2.10; 4) altering the topography of the Property by excavating and re-grading several sites, including a sinkhole behind Defendant's personal residence, all in violation of § 2.11; and 5) planting a burning bush on the property near Defendants' home, in violation of § 2.11. TNC also claims that, until a TNC representative was allowed to enter the Property on June 12, 2007, pursuant to this Court's Order, Defendants unreasonably prevented TNC from accessing the Property to monitor and/or study the Property for educational, scientific, or compliance purposes, as permitted by § 5.2.

Both parties agree that the only issue yet to be resolved is whether Defendants violated the terms of the Easement by filling and regrading the sinkhole located behind their residence. There is no dispute that Defendants did, indeed, fill a sinkhole located behind their residence with soil excavated from a pond on the Property.[1]  Agreeing that there are no material facts in dispute, both parties have filed motions for summary judgment.

## II.  ANALYSIS

### A.  Topography

The parties indicate that the only issue yet to be settled and, thus, the only issue addressed in the cross motions for summary judgment is whether Defendants' actions in filling and regrading a sinkhole located on the Property violate the terms of the Easement.

Relying on the following provisions of the Easement, TNC contends that the filling the regrading of the sinkhole was in direct violation of the terms of the Easement.[2]

> 1.  PURPOSE.  It is the purpose of this Easement to assure that the Protected Property will be retained forever substantially undisturbed in its natural

---

[1]  The reports of TNC's expert, Gerry Fister, and Defendants' expert, Larry Sims, indicate that what was originally perceived as a "dip" or "depression" on the Property is in fact a geographical feature commonly known as a sinkhole. [Record No. 43, Exs. 20 and 21].

[2]  It could be argued that Defendants' excavation of the pond also constitutes an impermissible alteration of the topography, however, TNC did not pursue this issue, focusing instead on the filling and regrading of the sinkhole.

-3-

> condition and to prevent any use of the Protected
> Property that will significantly impair or interfere with
> the Conservation Values of the Protected Property.
>
> . . .
>
> 2.5. <u>Topography</u>. There shall be no ditching; draining;
> diking; filling; excavating; removal of topsoil, sand,
> gravel, rock, or other materials; or any change in the
> topography of the land in any manner except in
> conjunction with activities otherwise specifically
> authorized herein.

As support for their contention that the filling and regrading

of the sinkhole was expressly authorized by the Easement,

Defendants urge that § 2.5, *supra*, must be read in conjunction with

§ 3.2 which provides as follows:

> 3.2. <u>Agricultural Uses</u>. Notwithstanding the foregoing
> provisions of paragraph 2, the Residential/Agricultural
> Area of the Protected Property (as shown on Exhibit B)
> may be used for commercial agricultural purposes
> including growing crops, raising and selling native
> plants and their seeds, grazing livestock, cutting,
> bailing and removing hay, and passage may be allowed
> across or upon the Protected Property in conjunction with
> this permitted activity.

Neither party claims that the language of the Easement is

ambiguous, only that their respective reading of the Easement is

correct. Accordingly, the Court will confine its interpretation of

the Easement to the plain language found in the four corners of the

document. *See Savedoff v. Access Group, Inc.*, 524 F.3d 754 (6th

Cir. 2008).

While the general purpose of the Easement is to retain the

Property in its undisturbed, natural condition, the Easement

expressly permits certain agricultural uses of the Property,

-4-

including growing crops.  Prior to filling the sinkhole, Defendants were growing crops around, and possibly in, the sinkhole, as permitted by the Easement.[3]  Defendants state that because it was both difficult and dangerous to farm the sides and basin of the sinkhole, they relied on the agricultural use exception found at § 3.2, and filled and re-graded the sinkhole using soil and silt material excavated from a pond on the Property.

Reading the plain language of the entire Easement, Defendants' interpretation of the agricultural use exception found at § 3.2 was not reasonable.  Notwithstanding the Easement's general purpose of maintaining the land in its natural state, Defendants were permitted to grow crops on the Property.  Growing crops on the Property does not violate the Easement, but filling and re-grading a sinkhole certainly does.  While § 3.2 permitted Defendants to grow crops on the Property, it did not permit substantial alterations of the topography to make the growing easier, which Defendants state was the purpose of filling the sinkhole.  Perhaps most importantly, § 2.5 specifically prohibits alteration of the topography, including filling, except in conjunction with activities specifically authorized by the Easement.

When read together, §§ 2.5 and 3.2 clearly contemplate alteration of the topography as a consequence of the growing of

---

[3]  TNC disputes Defendants' assertion that they were in fact growing a crop in the sinkhole prior to filling and regrading it; however, this dispute is not material to the Court's disposition.

crops, but not "draining; diking; filling; [or] excavating" for the sole purpose of making the farming easier.  As Defendants point out, simply plowing the earth in preparation for planting crops results in an alteration, however slight, of the topography. Pursuant to §§ 2.5 and 3.2, this alteration is permitted as a consequence of a farming activity.  TNC does not dispute that plowing a field does not violate the terms of the Easement. Defendants did not simply plow a field, however; they filled a sinkhole with an estimated 6,269 cubic yards[4] of fill material so as to make the farming easier.[5]  Although growing crops was specifically authorized by § 3.2, filling a sinkhole with 6,269 cubic yards of fill material is not growing crops - it is filling of the Property that is specifically prohibited by § 2.5 of the Easement.

Defendants' intentional filling and re-grading of the sinkhole located directly behind their residence violates the purpose of the Easement - to maintain the Property "substantially undisturbed in its natural condition" - and specifically violates the prohibition in § 2.5 regarding filling or otherwise changing the topography of the land.

_____

[4]  This was the amount of fill material, as estimated by TNC's expert, Gerry Fister. [Record No. 43, Ex. 20].  Defendant's expert offered no estimation of the amount of fill material.

[5]  Through an August 31, 2005, letter from their former attorney to TNC, Defendants' admitted that "[t]he sinkhole created a problem for my clients and they have addressed that problem by filling in the hole to adjust the grading."

**B.  Defendants' Counterclaims**

Defendants counterclaimed against TNC for breach of contract, tortious interference with a contract, harassment and selective prosecution, and fraud and material misrepresentation. [Record No. 21].  On page four of their Motion for Summary Judgment, Defendants state that they "seek payment and indemnification from TNC for any damages arising from TNC's breach of contract, interference with business opportunities, fraud, and misrepresentation." [Record No. 42 at 4].  Nowhere in the Motion, however, do Defendants point to any evidence demonstrating that they are entitled to summary judgment on those counterclaims.  In fact, on page five of their Motion, Defendants state that "[t]he only issue of any real substance now in dispute between the parties regarding the alleged violation of the Conservation Easement is whether the Defendants have improperly altered the topography of the property." Accordingly, Defendants have conceded that their counterclaims against TNC turn on the question of liability for alteration of the topography.  The Court having determined that Defendants violated the terms of the Easement by filling the sinkhole, Defendants' counterclaims are without merit.

**C.  Attorney Fees and Costs**

Pursuant to § 5.1 of the Easement, TNC requests an award of all expenses and costs incurred in this litigation, including reasonable attorney fees.  Section 5.1 provides, in pertinent part:

> All reasonable costs incurred by the Conservancy in enforcing the terms of this Easement against Grantor [Defendants], including, without limitation, costs and expenses of suit and reasonable attorneys' fees, and any costs of restoration necessitated by Grantor's [Defendants'] violation of the terms of this Easement shall be borne by Grantor [Defendants].

The Easement expressly authorizes an award of attorneys fees and costs incurred by TNC in enforcing the terms of the Easement. Defendants did not respond in opposition to TNC's request. Accordingly, TNC is entitled to the relief it seeks.

## III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED**:

1) That Defendants' Motion for Summary Judgment [Record No. 42] shall be, and the same hereby is, **DENIED**;

2) That Plaintiff's Motion for Summary Judgment [Record No. 43] shall be, and the same hereby is, **GRANTED;**

3) That Defendants shall restore the sinkhole behind their personal residence, to its condition at the time the Property was conveyed to them, including removal of approximately 6,269 cubic yards of fill material deposited in the sinkhole, and planting native plant species, as detailed in the report of TNC's expert, Gerry Fister;

4) That Defendants shall allow TNC and/or its third-party consultants reasonable access to the Property to monitor the removal of the fill material and restoration of the sinkhole;

5) That Defendants are permanently enjoined from denying TNC

-8-

reasonable access to the Property to conduct annual monitoring and for scientific or educational purposes, as outlined in the Easement;

6) That Defendants are permanently enjoined from making future topographical alterations to the Property which are not authorized by the terms of the Easement;

7) That Defendants shall pay to Plaintiff the reasonable costs and attorney fees Plaintiff incurred in this action to enforce the terms of the Easement, the amount to be determined by subsequent Order of this Court;

8) That, in order that the Court may fix the amount to be paid by Defendants to Plaintiff as a result of this Order, Plaintiff shall submit evidence of its attorney's fees and other expenses incurred in this action to enforce the terms of the Easement, as well as the reasonableness thereof, within **twenty (20) days** of the date of entry of this Order;

9) That, upon submission of Plaintiff's evidence of its attorney's fees and expenses as set forth above, Plaintiff shall state any objection to those amounts within **ten (10) days**; and

10) That the Clerk is directed to submit this matter for review upon conclusion of the briefing schedule outlined above.

This the 5th day of March, 2009.

-9-



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge