UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

THE NATURE CONSERVANCY, INC., )
                              )
        Plaintiff,            )
                              )   Civil Action No. 07-112-JMH
                              )
v.                            )
                              )
                              )
LARRY A. SIMS and             )   **MEMORANDUM OPINION AND ORDER**
MARSHA K. SIMS,               )
                              )
        Defendants.           )

**          **     **     **     ***

This matter is before the Court on The Nature Conservancy, Inc.'s ("TNC") Motion for Attorneys' Fees and Litigation Expenses [Record No. 50]. Defendants Larry and Marsha Sims ("Defendants" or the "Sims") responded in objection to the proposed fees and expenses [Record No. 52] and TNC replied [Record No. 53]. This matter is now ripe for review.

**BACKGROUND**

In a Memorandum Opinion and Order dated March 5, 2009 [Record No. 48], the undersigned granted TNC's Motion for Summary Judgment. Section 5.1 of the Conservation Easement provides that "[a]ll reasonable costs incurred by the Conservancy in enforcing the terms of this Easement against Grantor, including, without limitation, costs and expenses of suit and reasonable attorneys' fees, and any costs of restoration necessitated by Grantor's violation of the terms of this Easement shall be borne by Grantor." Easement at 6-

7.    Accordingly, the undersigned also determined that TNC is entitled to recoup from Defendants the reasonable fees and costs it incurred in enforcing the Conservation Easement, and ordered further briefing to determine the amount to be awarded to TNC.

### DISCUSSION

TNC seeks an award of $89,121.50 in attorneys' fees and an award of $18,092.33 in costs associated with this litigation.  The fees and costs are thoroughly detailed in an attachment to the affidavit of TNC attorney, Ernest H. Jones, II [Record No. 50, Ex. 1].  Defendants did not argue that TNC is not entitled to an award for fees and costs, but objected to the amounts of the fees and costs on several grounds.  For the reasons stated below, the Court will award TNC $77,337.50 in attorneys' fees and $18,092.23 in costs.

"The starting point for determining the amount of a reasonable attorney fee is the "lodestar" amount, which is calculated by multiplying the numbers of hours reasonably expended on the litigation by a reasonable hourly rate."  *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).  If the party seeking the attorney fees establishes that the number of hours and the rate are reasonable, the lodestar is presumed to be a reasonable fee.  *Id.* at 553 (citing *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 564 (1986)).  Where the party claiming

-2-

attorney fees achieved only partial success on its claims, an award based on the lodestar may result in an excessive fee award, thus calling for a reduction in the lodestar amount. *Id.* at 552.

Defendants do not dispute that the rates charged by TNC's counsel were reasonable, however, Defendants do take issue with the number of hours expended on the litigation. Defendants first argue that TNC achieved only limited success on its claims and thus, the fee award should be reduced accordingly. In its Motion for Preliminary Injunction, TNC alleged Defendants violated five provisions of the Conservation Easement by 1) grazing livestock without filing a grazing plan; 2) intentionally placing trash in a sinkhole on the property; 3) altering the topography of the property by excavating trees around a sinkhole; 4) placing dirt taken from a pond in a sinkhole; and 5) planting a burning bush near their residence. Defendants argue that because the parties resolved the alleged violations concerning the grazing plan, placement of trash in a sinkhole, removal of trees, and planting of a burning bush subsequent to the preliminary injunction hearing but before motions for summary judgment were filed, TNC only prevailed on one of the five issues presented - the alteration of the topography by filling a sinkhole - and TNC's attorney fee award should be substantially reduced to reflect its limited success.

As the Court understands the resolution of the four issues it was not ultimately called to decide, TNC chose not to pursue its

-3-

claim that Defendants impermissibly removed trees near a sinkhole, Defendants filed a grazing plan as required by the Conservation Easement, and Defendants removed the burning bush near their home. The resolution of the allegation of trash in or near a sinkhole is a bit unclear, as there are photographs in the record documenting such trash, yet the geologist's report indicated that no trash was used to fill the sinkhole. Regardless of the resolution of the trash issue, TNC obtained the vast majority of the relief it sought, either through out of court settlement subsequent to the preliminary injunction hearing or through the Court's Memorandum Opinion and Order of March 5, 2009. Because TNC obtained a significant portion of the relief it sought, the Court declines to reduce the number of hours expended on the litigation on a claim-by-claim basis. *See Hensley,* 461 U.S. at 435 ("Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. . . [T]he district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.").

While Defendants do not suggest that TNC's attorneys intentionally inflated or padded their time records, Defendants do argue that TNC's attorneys spent too much time performing specific tasks. First, Defendants assert that TNC's attorney spent too much time drafting and revising pleadings, motions, and memorandums.

The Court has meticulously reviewed the forty-four pages of billing records and finds that with the exception of TNC's Motion for Summary Judgment, the time spent drafting and revising documents does not appear unreasonable. TNC's attorneys spent nearly eighteen and one-half hours drafting and revising a ten page Complaint, which does not appear unreasonable given the detailed facts of the case and the need to determine how best to bring the action. Nearly fifty-three hours were spent drafting and revising the Motion for Preliminary Injunction that was filed simultaneously with the Complaint. This time appears reasonable given the in-depth treatment of the issues presented in the twenty-eight page memorandum and twenty-one exhibits. The nearly thirteen hours spent preparing the Motion for Attorneys Fees and Costs and twelve-page supporting memorandum also appears reasonable. The Court, however, agrees with Defendants that the sixty-six hours spent drafting and revising TNC's Motion for Summary Judgment is unreasonable. The twenty-one page memorandum in support of the Motion for Summary Judgment contains six pages of factual background, much of which was taken directly from the factual portion of the Motion for Preliminary Injunction. With the exception of the standard of review, the eight pages of argument contain no references to or analysis of case law or statute, because as TNC's memorandum points out, there were no disputed issues of material fact and this case turned on a simple issue of

contract interpretation.  The Court finds it entirely unreasonable to allow over sixty-six hours for the preparation of the Motion for Summary Judgment and accompanying memorandum.  The Court finds that ten hours would have been a reasonable amount of time to spend drafting a motion and memorandum  that contained a factual recitation taken, in large part, from a previously drafted document and little legal analysis.  The Court will reduce the time billed for drafting and revising TNC's Motion for Summary Judgment by 56.1 hours billed by attorney Tom Barker, the primary attorney on the case, at the rate of $160.00 per hour, for a disallowed fee of $8,976.

The Court has considered Defendants' objections to the time spent by TNC's attorneys inspecting the property and finds that the time inspecting the property was reasonable.  Three separate attorney representing TNC traveled to and inspected the property on three separate days.  No attorney billed for more than one visit to the property, and no two attorneys traveled and inspected the property on the same day.  The first visit occurred the day of the hearing on the Motion for Preliminary Injunction, with the last two visits occurring approximately three weeks later in connection with the Court-ordered inspection of the property by TNC's representatives.  The Court finds that these inspections were reasonable and necessary for enforcing the terms of the Easement.

Defendants also objected to the small amount of time spent

researching the effects of pesticide usage in and around sinkholes. This objection is without merit. This research was performed by TNC's attorney in response to Defendants' argument that farming over the sinkhole was permitted by the Conservation Easement and would in fact benefit the hydrology of the area. At the time the research was performed, TNC's counsel believed its time was reasonably expended in pursuit of the success of its claim, and the Court will not reduce the fee award. *See Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

TNC's attorneys spent nearly ten hours responding to audit inquiries from Price-Waterhouse in connection with this litigation. TNC's responses to audit inquiries were a cost incurred in enforcing the Easement against Defendants, as TNC was required to report pending litigation. The time TNC's attorneys spent responding to media inquiries, however, was not a cost incurred in enforcing the Easement. Unlike an audit inquiry that required TNC to value the likelihood of success and the potential loss associated with this litigation, TNC's attorneys were not required to respond to media inquiries. While TNC may have found it desirable to have its attorneys draft press releases or respond to media inquiries in an effort to bolster its public image, such costs were not incurred in enforcing the Easement. Although the negative press allegedly generated by Defendants may have been in response to this litigation, the outcome of this litigation did not

-7-

depend in any way on the responses to the media inquiries.   The
Court finds it unreasonable to require Defendants to pay the costs
associated with TNC's responses to the media.   TNC attorney G.
Thomas Barker spent 15.8 hours responding to media inquires, at the
rate of $160 per hour for a total of $2,528.   TNC attorney Ernest
Hank Jones, II spent 1.4 hours responding to media requests, at the
rate of $200 per hour for a total of $280.   The Court will reduce
the requested fee award by $2,808 for time spent responding to
media inquiries.

     Defendants argue that this case did not require the time and
knowledge of the four attorneys, four paralegals, and two law
clerks who worked on this matter, and that the use of so many
individuals created excessive fees for in-office communication.
Upon review of the billing records, it is clear that associate
attorney G. Thomas Barker was the primary attorney handling the
case, with more senior partners Ernest Hank Jones, II, Donald P.
Moloney, II, and Douglas L. McSwain perhaps advising or directing
the course of the litigation.   The Court has no reason to question
the way TNC's attorneys staffed this case.   It is quite customary,
and in fact more economical, for an associate level attorney to
handle simple matters such as this while being advised by more
seasoned attorneys.   The paralegals and law clerks provided legal
research and document management at a lower billing rate, thereby
reducing the overall fees charged in this matter.   The Court has

-8-

identified approximately fifteen hours spent on in-office communication between the various attorneys, paralegals, and law clerks who staffed this case, and does not find that time unreasonable for a case that has continued over the course of two and one-half years.

Defendants urge the Court to disallow the expense associated with TNC's expert geologist's report on the grounds that because they admitted to filling the sinkhole with dirt, the expert's report served no purpose in the litigation. The Court declines Defendants' request to disallow the expense of TNC's expert geologist because the report served multiple purposes in TNC's enforcement of the Easement. Initially, Defendants defended the filling of the sinkhole by arguing that the dip or depression they filled was not a sinkhole. TNC used the expert geologist's report to prove that the area in question was, in fact, a sinkhole. TNC's expert was able to determine the original contours of the sinkhole and how much fill material had been placed in it, which aided in the restoration of the sinkhole. In fact, in the March 5, 2009, Memorandum Opinion and Order, the undersigned directed that the sinkhole be restored to its original condition, as detailed in TNC's expert's report. The Easement provides that Defendants shall pay any costs of restoration necessitated by their violation of the Easement, and TNC's expert geologist's report was such a cost.

Finally, Defendants argue they should not be required to

reimburse TNC the $2,927.41 premium for the bond this Court required upon the issuance of the preliminary injunction. Defendants state, without any supporting documentation, that TNC's expert damaged approximately three acres of wheat. Because there is no evidence of any damaged crops and because TNC ultimately prevailed on its claims, the Court will not excise the bond premium from the expenses payable by Defendants to TNC. While not specifically objecting to the remainder of the expenses claimed by TNC - copying, printing, facsimile, and travel expenses - Defendants asked that the Court carefully review those charges. The Court has done so, and finds that all expenses claimed were reasonable.

Defendants requested an evidentiary hearing to determine if there exists a favorable fee arrangement between TNC and its attorneys whereby TNC is charged rates less than those represented in the billing records, whereby an award of the requested fee would result in a windfall to TNC's attorneys. In response to Defendants' inquiry, TNC's attorneys stated that they have received no compensation from TNC or any other entity on TNC's behalf, and that they undertook the representation of TNC in this matter with the understanding that they would receive compensation only to the extent that TNC prevailed and was able to recover attorney fees from Defendants pursuant to the Easement. The fact that TNC's attorneys took this case on a contingent fee arrangement does not

-10-

change the fact that Defendants are liable for the fees and expenses incurred in enforcing the terms of the Easement. The amount of attorney fees should not result in a second round of litigation, and the Court declines to conduct a hearing on this issue. *See Hensley*, 461 U.S. at 437 ("[a] request for attorney's fees should not result in a second major litigation.").

## CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

1)  That The Nature Conservancy's Motion for Attorneys' Fees and Litigation Expenses [Record No. 50] shall be, and the same hereby is **GRANTED**. The Nature Conservancy is awarded $77,337.50 in attorneys' fees and $18,092.23 in expenses.

2)  That, on or before **August 7, 2009**, The Nature Conservancy shall file supplemental affidavits and supporting documents for attorney fees incurred after March 25, 2009, the date through which its billing records attached to the Motion for Attorneys' Fees and Litigation Expenses were current. Defendants shall have **ten days** from the date of The Nature Conservancy's supplemental filing in which to file a brief in response.

This the 30th day of July, 2009.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

-11-